UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JUAN GOMEZ,
        Plaintiff,

vs                                                                                                                   03-2084

DONALD N. SNYDER, et. al.
        Defendants.

**OPINION**

Before the court are the defendants, Blair Leibach and Donald Snyder's summary judgment motion [47] and the plaintiff's response [98].

**Standard**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P.56(c); *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)*; Herman v. National Broadcasting Co., Inc.*, 744 F.2d 604, 607 (7th Cir. 1984), *cert. denied*, 470 U.S. 1028 (1985). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.,* 956 F.2d 1436, 1440 (7th Cir. 1992). Further, this burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). Credibility questions "defeat summary judgment only '[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility.'" *Outlaw*, 259 F.3d at 838, *citing* Advisory Committee Notes, 1963 Amendment to Fed. R. Civ. P. 56(e)(other citations omitted).

Fed. Rule Civ. Pro. Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574,

586 (1986).  Disputed facts are material only if they might affect the outcome of the suit.  *First Ind. Bank v. Baker,* 957 F.2d 506, 507-08 (7th Cir. 1992).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, *247-248, 106 S.Ct. 2505, 2510 (1986).

## Background

Plaintiff is an inmate, currently incarcerated at Danville Correctional Center, who brings his complaint pursuant to 42 U.S.C. §1983 alleging deliberate indifference to serious medical needs.  Specifically, Plaintiff alleges that sometime during 1999, he began to experience back pain, subsequent leg pain, and difficulty urinating.  Plaintiff's complaint chronicles his medical care between 1999 and April of 2003 and includes several examinations by physicians, including specialists.  Plaintiff admits he received diagnostic tests, including x-rays, an EMG, a nerve conduction study and two MRIs.  Plaintiff's care also included prescriptions for medication, exercises, vitamin E injections, and an epidural injection**.**

Defendants assert that in light of the facts claimed to be undisputed, Plaintiff's claim alleging deliberate indifference, fails as a matter of law.  Defendants assert that Plaintiff is unable to prove any personal involvement of Defendant Snyder, nor can he establish the requisite subjective component of *Estelle v. Gamble*, without which, it is impossible to show deliberate
indifference to Plaintiff's serious medical needs.  Moreover, Defendants assert that neither of them have a duty to provide injunctive relief to Plaintiff for two reasons: first, because neither of them work at Plaintiff's institution, or in the case of Defendant Snyder, for the Department of Corrections, and second, because Plaintiff does not have an ongoing constitutional violation.

## Undisputed Material Facts[1]

1. Plaintiff is suing Defendant Snyder because "he signed off on" Plaintiff's grievances. *See* Plaintiff's dep. p. 19, l. 14 - 18 [47].
2. Defendant Snyder did not receive or review the grievances regarding Plaintiff's medical issues.  *See* Affidavit of Terri Anderson [47].
3. The grievances were reviewed by Terri Anderson of the Administrative Review Board and signed by Sandra Kibby-Brown as the Director's designee.  Id.
4. Plaintiff is suing Defendant Leibach because he reviewed, denied and signed Plaintiff's grievances regarding his medical care at the institutional level and because Plaintiff wrote him letters, including one regarding a slow walk pass.  *See* Plaintiff's dep. p. 20, l. 11 - p. 21, l. 17 [47].

---

[1]Defendants' exhibits can be found in the attachment to their summary judgment motion [47].

5. Plaintiff alleges Defendant Leibach told him the walkers were placed in front of the movement line for security reasons. *See* Id., p. 20, l. 11 - p. 21, l. 17).
6. Inmates with slow walk passes were placed in the front of the line for security reasons as all inmate movement at Danville had to be escorted. *See* Affidavit of Liebach [47].
7. Plaintiff never spoke personally with Defendant Leibach. *See* Plaintiff's dep. p. 21, l. 22 - 24 [47].
8. Defendant Leibach is not a physician and not trained or licensed to determine what care an inmate needs or to prescribe that care. *See* Affidavit of Leibach [47].
9. Defendant Leibach reviewed Plaintiff's grievances, which included notations by the grievance officer that Plaintiff was receiving medical care for his back pain, including consultations with specialists. Id.
10. Defendant Leibach concurred that the grievances be denied because he was satisfied that Plaintiff's medical concerns were being addressed by medical professionals. Id.
11. Plaintiff did not receive a recommended back brace. *See* Plaintiff's dep. p. 22, l. 6 - 10.
12. Dr. Uzoaru states that the back brace was not medically necessary to treat the plaintiff's condition. Affidavit of Dr. Uzoaru. Exhibit 1. par. 34 [45].
13. Dr. Uzoaru is a physician. Id.
12. Plaintiff admitted he was seen on several occasions by physicians, including specialists, and was provided with diagnostic tests which included x-rays, MRIs, and nerve conduction studies. Plaintiff's affidavit [95] and plaintiff's complaint, pp. 6 - 17 [8].
13. Plaintiff admitted he was prescribed medications, including injections and exercises for his back. Id.
14. Plaintiff's complaint about being placed in the front of the line was that "it was kind of hard for [plaintiff] to walk in front of the line with all these guys behind me. Anybody can just shove me, push or step on my foot and I am going to fall." *See* Plaintiff's dep. p. 21, l. 10 - l. 13.
15. Plaintiff does not allege he was ever pushed or shoved or suffered any injury as a result of being in the front of the line.
16. Defendant Snyder is no longer with the Illinois Department of Corrections. *See* Anderson affidavit [47].
17. Defendant Leibach is no longer at Danville Correctional Center. *See* Leibach affidavit [47].

### Plaintiff's "Disputed Material Facts"

The plaintiff has submitted disputed material facts [95]. The court notes that many of the plaintiff's "disputed material facts" are conclusory,[2] argumentative and unsupported.. More

---

[2](1) Plaintiff's claim against Snyder is based on his denial of the plaintiff's grievances, *causing denials/delays of medical care and causing unnecessary pain and suffering as well as spinal cord injury*. (2) Plaintiff's claim against Leibach is based on his knowledge of plaintiff's medical complaints and his denial of grievances regarding plaintiff's medical complaints *"causing unnecessary pain and suffered as well as spinal cord injury."* (3) Leibach's numerous

than "broad-brushed, conclusory allegations" are necessary to show the existence of a triable issue.

## Plaintiff's Additional Material Facts[3]

1.  The plaintiff chronicles his grievances and numerous occasions that he was treated by physicians, including specialists, and the provision of diagnostic tests which included x-rays, MRIs, and nerve conduction studies, medication and injections. Further, the plaintiff chronicles suggestions and/or recommendations made by various doctors, some of which were initially denied by the vendor, Wexford, then reviewed by the Regional Medical Director for Wexford and approved. See paragraphs 7,9, 10, 15, 16, 18, 22 of Plaintiff's affidavit [95].
2.  On January 31, 2001, after falling down some stairs, the plaintiff filed a grievance regarding his fall, inability to walk and keep up with the mass movement line and "lack" of medical treatment. He also advised that he did not go to breakfast or lunch because his legs make it harder to keep up with the line. For relief requested, the plaintiff asked to go to "an outside hospital and have my problem fixed or treated or to go to an outside hospital, then a specialist." The plaintiff did not request a slow walk pass for chow lines. The plaintiff's grievance was referred to the medical director on February 5, 2001. The medical unit administrator advised the grievance officer that the plaintiff's low back pain had been treated appropriately, his condition was common and a result of the fall and that plaintiff he was also scheduled to see an orthopaedic in March 2001. *See* plaintiff's affidavit [95], para. 12; *see also* complaint, exhibit 9 [8].
3.  On September 10, 2001[4], the plaintiff filed a grievance for a September 10, 2001 incident. After the plaintiff was not able to keep up with the mass movement line for meals, Lt. Brown ordered the plaintiff to go back to the housing unit. The plaintiff complained that he had addressed this issue with the doctors, but the issue went unresolved. On September 14, 2001, the counselor noted that Ericka, in medical records. advised that the plaintiff did not have a slow walk pass in his records. It was reported that Dr. Uzoaru would issue a

---

agreement to denials of medical recommendation *created a pattern of deliberate indifference.* (4) The denial/delay of medical treatment and testing *prevented plaintiff from receiving the proper diagnosis to treat the spinal cord compression that required immediate surgery to prevent further spinal cord damage and permanent paralysis.*

[3]The plaintiff points to exhibits attached to his complaint. Although the court is not required to scour the records or go outside the plaintiff's response, the court will do so in order to resolve the plaintiff's claims against Snyder and Leibach. "Judge are not like pigs, hunting for truffles buried in the record." *Albrechtsen v. Bd. of Regents,* 2002 WL 31397690 (7th Cir. 2002), *quoting United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

[4]The plaintiff's grievance is dated October 10, 2001, but as the counselor noted a response on September 14, 2001, the court reasonably assumes the grievance was filed sometime between September 10-14, 2001.

<ol start="3">
<li>slow walk pass for the plaintiff. On September 20, 2001, Leibach concurred with the results of the grievance. *See* Complaint, exhibit 23 [8].</li>
<li>On October 12, 2001, the plaintiff filed a grievance complaining about his lower back pain and his difficulty to walk properly. He did not claim that he had not been issued the slow walk pass or that he was missing meals in this grievance. *See* Complaint, exhibit 24 [8].</li>
<li>The plaintiff filed a grievance on July 11, 2002, after Lt. Brown sent the plaintiff back from the afternoon chow line because he couldn't keep up with the line. For relief, the plaintiff asked that Brown stop harassing him and to acknowledge his slow walk permit. In his grievance, the plaintiff claimed that was the third time Brown had sent him back. *See* Complaint, exhibit 37 [8].</li>
<li>On July 11, 2002, the same day the plaintiff filed his July 11, 2002 grievance, his concerns were forwarded to "IIB." The misconduct alleged was found not be substantiated as Lt. Brown stated that Mr. Gomez needed to produce his slow walk pass and Brown would honor it. Leibach concurred with the results of the grievance on August 15, 2002. *See* Id.</li>
<li>In a September 16, 2004 letter to the plaintiff, Leibach informed the plaintiff that slow walkers are to be placed in front of the mass movement lines and further advised the plaintiff that if he had a problem with the policy to contact a staff member. *See* September 16, 2004 letter attached to Plaintiff's response as Exhibit D [95].</li>
<li>Plaintiff claims he was not pushed or shoved as a result of being in the front of the line because he no longer attended "chowlines." Plaintiff's Affidavit [95]. The plaintiff does not allege any specific length of time that he did not attend chow -- whether it was a day, two days, a week, or a month. The plaintiff does not claim the defendants knew he "no longer" attended chow time due to his medical condition.</li>
<li>Plaintiff did not receive his assignment [job][5] back in the L.T.S. Dept. after being observed lifting weights. *See* Plaintiff's Affidavit [95].</li>
</ol>

### Discussion and Conclusion

In order to impose individual liability under 42 U.S.C. §1983, a plaintiff must prove that the defendant had some personal responsibility for the alleged violation. *Duckworth v. Franzen*, 780 F.2d 645 (7 Cir. 1985). Personal involvement cannot be established simply by alleging that a defendant was notified by letter of an alleged Constitutional violation. *Volk v. Coler*, 638 F. Supp. 1540, 1548 (C.D. Ill. 1986), aff'd, 845 F.2d 1422 (7th Cir. 1988). The personal responsibility requirement of §1983 is satisfied if he or she acts or fails to act with a deliberate or reckless disregard of Plaintiff's Constitutional rights; or 2) if the conduct causing the Constitutional deprivation occurs at her knowledge and consent. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). Because §1983 does not recognize a doctrine of respondeat superior, *Lash* at 650, a plaintiff must establish a defendant's personal involvement in the claimed Constitutional violation.

---

[5] Inmates have no constitutionally protected interest in a prison job. *Wallace v. Robinson*, 940 F.2d 243 (7th Cir. 1991)(en banc).

Defendant Snyder did not receive, review, or sign off on the grievance(s) alleged in the complaint. (Affidavit of Teri Anderson). Plaintiff does not claim he spoke with Defendant Snyder; he just alleges that Snyder signed off on the grievances. Nevertheless, Plaintiff responded to Defendants' Motion for summary judgment [95] asserting that there was a dispute as to whether Defendant Snyder had personal involvement in the denial of his grievances (Plaintiff's Response, p. 2). However, the Plaintiff acknowledges that Defendant Snyder's designee signed off on the grievances (Plaintiff's Response, p. 2), but asserts that Defendant Snyder authorized the designee (Plaintiff's Response, p. 2). Plaintiff reiterated his allegations against Defendant Leibach, asserting that Defendant Leibach knew of Plaintiff's medical complaints as a result of the grievances Plaintiff filed.

In *Johnson v. Snyder*, 444 F 3d. 579 (7th Cir. 2006), the court granted summary judgment to defendant Snyder because Snyder was not personally involved or responsible for the conditions about which Johnson complained. Johnson claimed that there was a genuine issue of material fact as to Snyder's knowledge and involvement. To this end, Johnson submitted a self-serving affidavit stating that he informed Snyder and the other defendants of his condition, requested his crutch, and informed them of his fall. *Cf. Albiero v. City of Kankakee,* 246 F.3d 927, 933 (7th Cir.2001) (holding that "self-serving affidavits without factual support in the record will not defeat a motion for summary judgment." (internal quotation and citations omitted)). Even crediting Johnson's generalized affidavit, its contents did not overcome the affidavit of Nancy S. Tucker, the Manager of IDOC's Office of Inmate Issues, which described the grievance process. Tucker explicitly stated that "Director Snyder did not personally receive, review or decide appeals of inmate grievances," and explained how such tasks were delegated to others in the department. To survive summary judgment, Johnson "needed to offer some record evidence that because of the purported letters, the defendant officials knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated." *Vance v. Peters,* 97 F.3d 987, 994 (7th Cir.1996) (citing *Gentry,* 65 F.3d at 561).

Gomez has the same burden as Johnson, but Gomez has not met it. Critically, there is no evidence that Snyder actually read Gomez's grievances or had any subjective awareness of Gomez's condition. To the contrary, there is evidence that Snyder does not review inmate correspondence relating to grievances. That task is delegated to subordinates. In this case, Anderson explicitly stated that "Defendant Snyder did not receive or review the grievances regarding Plaintiff's medical issues." Further, Anderson stated "[t]he grievances were reviewed by her and signed off on by Sandra Kibby-Brown as the Director's designee. Thus, Gomez has not shown that Snyder had any personal involvement in the denial of his grievances or that Snyder personally facilitated, approved, condoned, or turned a blind eye to Gomez's situation. While Plaintiff cites *Crowder* for the proposition that a supervisor can be held liable if he directs unconstitutional conduct or knows it is occurring, the plaintiff has provided no evidence that Snyder directed unconstitutional conduct or knew it was occurring. The record before this court shows that Defendant Snyder does not have the requisite personal involvement for liability under §1983 and is entitled to summary judgment in his favor.

The court turns next to Gomez's claim that Leibach violated his rights under the Eighth

Amendment when he was deliberately indifferent to the plaintiff's serious medical needs. Deliberate indifference to a serious injury or medical need violates a prisoner's rights under the Eighth Amendment to be free from cruel and unusual punishment. *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001), *citing Estelle v. Gamble*, 429 U.S. 153, 182-83 (1976). The injury or need must be objectively serious, *and* the official must personally know of the risk and consciously disregard it. *See Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999); *Mathis v. Fairman*, 120 F.3d 88. 91 (7th Cir. 1997); *Wynn v. Southward*, 251 F.3d at 593 (2001). An objectively serious injury or medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Chapman*, 241 F.3d at 845, *quoting Zentmyer v. Kendall County* 220 F.3d 805, 810 (7th Cir. 2000)(*quoting Gutierrez v. Peters* 111 F.3d 1364, 1373 (7th Cir. 1997)). An objectively serious condition also presents itself if "'failure to treat [it] could result in further significant injury or unnecessary and wanton infliction of pain.'" *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999), *quoting Gutierrez*, 111 F.3d at 1373. The subjective component (deliberate indifference) does not encompass negligence or even gross negligence. *Id.*, *citing Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991); *Farmer v. Brennan*, 511 U.S. 825, 836 (1994). The prisoner must "show that the prison official was subjectively aware of the prisoner's serious medical needs and disregarded an excessive risk that a lack of treatment posed to the prisoner's health or safety." *Wynn*, 251 F.3d at 593, *citing Farmer v. Brennan*, 511 U.S. at 837; *Zentmyer*, 220 F.3d at 811. A prisoner is not required to show that he or she was "literally ignored." *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)(jury could find deliberate indifference, "[i]f knowing that a patient faces a serious risk of
appendicitis, the prison official gives the patient an aspirin and an enema and sends him back to his cell.").

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that in order to violate a prisoner's Eighth Amendment rights as they relate to medical care, an official must demonstrate deliberate indifference to the serious medical needs of that inmate, and concluded that "deliberate indifference to serious medical needs of prisoners" constitutes the "unnecessary and wanton infliction of pain," 429 U.S. 97, 104 (1976). However, the Court drew a distinction between an "inadvertent failure to provide adequate medical care," *Estelle* at 105, and "an unnecessary and wanton infliction of pain" that is "repugnant to the conscience of mankind." *Estelle* at 106.

"To raise an Eighth Amendment issue, 'the infliction [of punishment] must be deliberate or otherwise reckless in the criminal law sense, which means that the Defendant must have committed an act so dangerous that his knowledge of the risk can be inferred or that the Defendant actually knew of an impending harm easily preventable.'" *Snipes v. Detella*, 95 F.3d 586, 590, *citing Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1995). Furthermore, "mere negligence or even gross negligence does not constitute deliberate indifference." Id., *citing* Wilson v. Seiter, 501 U.S. 294,305 (1991). Likewise, "medical decisions that may be characterized as 'classic example[s] of matter[s] for medical judgment *such as whether one course of treatment is preferable to another'* are beyond the Amendment's purview." *Snipes v.*

7

*Detella*, 95 F.3d 586, 591 (7th Cir. 1996)(emphasis added). While the state has "an affirmative obligation under the Eighth Amendment to provide persons in its custody with a medical care system that meets minimal standards of adequacy," (*Meriwether v. Faulkner*, 821 F.2d 408, 4ll (7th Cir. 1987)), inmates are not entitled to unqualified access to health care. *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 1000 (1992); *see also Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321 (1991). "A prisoner's dissatisfaction with a doctor's prescribed course of treatment does not give rise to a constitutional claim unless the medical treatment is so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition." *Snipes* at 592. Moreover, prison administrators must rely on those with medical expertise to assess the needs of inmates and to prescribe treatment. *McEachern v. Civiletti*, 502 F. Supp. 532, 534 (N.D. Ill. 1980).

The Plaintiff has not established either that Defendant Leibach knew he had a serious medical need that was not being addressed by medical staff, or that Defendant Leibach had any further duty to Plaintiff than to determine he was receiving medical care. Plaintiff has admitted in his affidavit (and his complaint, pp. 6-17) that he was seen on several occasions by physicians, including specialists, and was provided with diagnostic tests which included x-rays, MRIs, and nerve conduction studies and was prescribed medication, including injections, and exercises for his back. Finally, Plaintiff admitted he received all of the relief he asked for in his grievances, with the exception of a back brace (Plaintiff's dep. p. 23, l. 14 - 21). Plaintiff's complaint was replete with the medical care received while at Danville Correctional Center. However, it appeared he was not satisfied with the pace at which he received the care or the result of the interventions prescribed for him by the physicians. This dissatisfaction cannot be the basis for a deliberate indifference claim. *See Snipes*, *supra*.

Plaintiff's allegations against Defendant Leibach are that he concurred with the denial of his grievances (Plaintiff's dep. p. 20, l. 11 - p. 21, l. 17). However, the grievances that Defendant Leibach reviewed had already been investigated and the investigation had revealed that Plaintiff was receiving medical care for the complaints in his grievance, including care by specialists. The most Defendant Leibach, as a non- physician, could do was to make sure an inmate complaining about medical issues had access to medical professionals who were trained to deal with those issues. In this case, the grievances reviewed by Defendant Leibach assured him that medical care was being given to the plaintiff. Additionally, to the extent that Plaintiff complained about delays in receiving care because recommendations had been denied, Defendant Leibach had no authority over what medical recommendations were denied or when those recommendations were followed .

On the record before the court, the Plaintiff has not established that Defendant Leibach had any subjective knowledge that Plaintiff had a serious medical need that was not being addressed by medical staff. All of the notification received by Defendant Leibach regarding Plaintiff's medical complaints contained a summary of the medical care Plaintiff was receiving for his back and associated issues. Without the ability or authority to second guess the physicians already treating Plaintiff, Defendant Leibach had no further duty to Plaintiff than he performed, to make sure Plaintiff was being assessed and, if prescribed, treated by physicians for his ailments.

Plaintiff's "Disputed Material Facts," in which he asserts that the denials of his grievances by Defendant Leibach somehow caused him to not receive specific medical care do not create questions of material fact sufficient to defeat Defendant Liebach's motion for summary judgment. These facts also do not create any material fact as to whether Defendant Leibach had any duty to provide medical care.  As a result of the grievances and responses to the grievances reviewed by Defendant Leibach, Defendant Leibach knew that Plaintiff was under the treatment of physicians for his complaints, and could do no more in response to Plaintiff's specific complaints, regardless of Plaintiff's dissatisfaction with his treatment.  Therefore, Defendant Leibach is entitled to summary judgment in his favor.

      Plaintiff also alleged he wrote letters to Defendant Leibach (Plaintiff's dep. p. 20, l. 11 - p. 21, l. 17).  One of these letters was regarding those with slow walk passes being placed at the front of group movement lines (Plaintiff's dep. p. 20, l. 19 - p. 21, l. 21).  Plaintiff alleges he received a response from Defendant Leibach that the slow walkers were put in front for security reasons (Plaintiff's dep. p. 20, l. 19, p. 21, l. 21).  At Danville Correctional Center, during movement, inmates had to be escorted by security staff (Affidavit of Leibach).  During times of group movement, those inmates with slow-walk passes were sometimes placed in the front of the line to keep the line together and maintain the escort for all of the inmates (Affidavit of Leibach). To allow those who walked most slowly to lag behind the group would defeat the purpose of having each inmate under escort during movement and would then cause a possible security breach.  Plaintiff's complaint about being placed in the front of the line was that "it was kind of hard for [plaintiff] to walk in front of the line with all these guys behind me.  Anybody can just shove me, push or step on my foot and I am going to fall." (Plaintiff's dep. p. 21, l. 10, l. 13). Plaintiff does not allege that he was ever pushed or shoved, or that he fell and sustained injury as a result of being placed in front of the line, just that he believed it was a possibility.  Without injury, there is no basis for liability under §1983. *See Jackson*, *supra*.  Additionally, there is no evidence that Defendant Leibach knew that Plaintiff was in danger of falling by allowing the entire line to slow down rather than the slow walkers to walk an unacceptable distance behind the rest of the inmates.

      As to the plaintiff's claims that Leibach knew he missed meals due to his medical conditions, the record before this court shows that the first time the plaintiff complained that he missed meals was in his January 31, 2001 grievance.  Leibach was not indifferent to the plaintiff's complaint.  His grievance was referred to the medical director.  The medical unit reported that the plaintiff's medical concerns were being addressed and that he was scheduled for an orthopaedic appointment a few weeks later.  The plaintiff received the relief he requested - to see an outside specialist.  The plaintiff did not advised the counselor in his grievance that he wanted a slow walk pass or that he had previously requested a slow walk pass from medical staff and he had not received one.  Nine months later, on September 10, 2001, the plaintiff filed another grievance wherein he complained that he was not able to keep up with the mass movement line for meals and that Lt. Brown ordered the plaintiff to go back to the housing unit.  The plaintiff complained that he had addressed this issue the doctors, but the issue went unresolved.  The staff immediately responded to the plaintiff's complaint.  On September 14, 2001, the counselor noted that Ericka in medical records advised that the plaintiff did not have a slow walk pass in his records.  It was

9

then reported that Dr. Uzoaru would issue a slow walk pass for the plaintiff. On September 20, 2001, Leibach concurred with the results of the grievance. The facts show that, rather than being deliberately indifferent to the plaintiff's complaint that Brown caused him to miss a meal on September 10, 2001, the Plaintiff's concerns were responded to quickly. In his October 12, 2001 grievance, the plaintiff did not complain about a slow walk pass or claim he was missing meals. Nine months later, on July 11, 2002, the plaintiff complained that Lt. Brown sent him back from the afternoon chow line because he couldn't keep up with the line. For relief, the plaintiff asked that Brown stop harassing him and to acknowledge his slow walk permit. That same day, the plaintiff's complaint was referred to "IIB." The plaintiff's grievance was investigated and he was advised that he needed to show his slow walk pass to the escorting officers and it would be honored. Again, the facts show that, rather than being deliberately indifferent to the plaintiff's complaint that Brown caused him to miss a meal on July 2002, the plaintiff's concerns were responded to quickly. On neither occasion that the plaintiff filed a grievance regarding a slow walk pass or missing meals was Liebach indifferent to the plaintiff's complaints. Furthermore, the record before this court shows that the plaintiff only sporadically missed a few meals across a nine month period of time. On each occasion that the plaintiff filed a grievance, his concerns were addressed quickly. Leibach is entitled to summary judgment on this claim as a matter of law.

Plaintiff has also asked for injunctive relief in his complaint. Injunctive relief is not available unless a plaintiff can show an ongoing violation of federal law. *Al-Alamin v. Gramley*, 926 F.2d 680,685 (7th Cir. 1991). In order to obtain injunctive relief, a plaintiff has to show an ongoing violation of federal law. *See Al-Alamin*, *supra*. In this case, neither Snyder or Leibach is in a position to comply with an injunction should one issue. Defendant Snyder is no longer with the Illinois Department of Corrections and Defendant Leibach is no longer at the institution in which Plaintiff is housed. Because neither of these defendant could comply with an injunction should it issue, defendant Snyder and Leibach are entitled to summary judgment in their favor.

In conclusion, the Plaintiff has not established either sufficient personal involvement on the part of Defendant Snyder or a greater duty than that already performed by Defendant Leibach that would defeat their motion for summary judgment.

**It is therefore ordered:**

1. **The court's March 27, 2007 order is vacated to the extent it denied in part the Defendants, Snyder and Leibach's summary judgment motion.**
2. **Pursuant to Fed. R. Civ. Pro. Rule 56(c), the Defendants, Snyder's and Leibach's summary judgment motion is granted [47].**
3. **The clerk of the court is directed to enter judgment in favor of the defendant and against the plaintiff at the close of this lawsuit.**
4. **If the plaintiff wishes to appeal the court's order, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to**

**appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).**

**Enter this   18th   day of May 2007.**

/s Michael P. McCuskey
_____
**Michael P. McCuskey
Chief United States District Judge**